James R. LEWIS, Plaintiff,

v.

CIMARRON VALLEY RAILROAD, Defendant/Third Party Plaintiff,

v.

Dr. William O. Hopkins, Third Party Defendant.

No. 99–2509–JWL.

United States District Court, D. Kansas.

Sept. 7, 2001.

John T. Peak, John M. Torrence, Hubbell, Sawyer, Peak, O'Neal & Napier, Kansas City, MO, Robert D. Loughbom, Lenexa, KS, for James R. Lewis.

L.J. Buckner, Jr., R.B. Miller, III, Lathrop & Gage L.C., Kansas City, MO, for Cimarron Valley Railroad.

Scott K. Logan, M. Bradley Watson, Jeff K. Brown, Logan & Logan, L.C.Prairie Village, KS, for Dr. William O Hopkins.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

James R. Lewis filed suit under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq., against Cimarron Valley Railroad ("Cimarron"). According to Mr. Lewis, Cimarron was negligent in not providing him with a safe work environment. Nine months later, with leave of this court, Cimarron filed a third-party complaint against Dr. William O. Hopkins alleging that a portion of Mr. Lewis' damages are the result of Dr. Hopkins' negligence. This matter is currently before the court on Dr. Hopkins' motion to dismiss for failure to state a claim (Doc. 41).[1] For the reasons set forth below, Dr. Hopkins' motion to dismiss is denied.

Dr. Hopkins argues that Cimarron's claim should be dismissed because Kansas law does not permit a defendant in a FELA case to join a physician who treated an injury to the plaintiff allegedly caused by the defendant. Dr. Hopkins further argues that even if Kansas law would recognize a claim against Dr. Hopkins, the court lacks subject matter jurisdiction over the claim and Dr. Hopkins was improperly joined under Federal Rule of Civil Procedure 14(a). Cimarron resists the motion to dismiss asserting that the medical defendant must be joined in one action so that one jury can weigh the culpability, if any, of all the relevant parties and apportion liability and damages appropriately. After considering the parties' arguments, Dr. Hopkins' motion to dismiss is denied because Kansas law permits a defendant, sued under FELA, to join a third party on a contribution or comparative implied indemnity claim and have the parties' comparative fault determined in one action. The court further holds that supplemental jurisdiction does exist because the two claims stem from a common core of facts. Finally, joinder is appropriate under Rule 14(a) because Cimarron's claim derives from the FELA claim.

---

1. Dr. Hopkins alleged in his motion that the court lacks subject matter and personal jurisdiction, that venue is improper and that Cimarron lacks standing to sue Dr. Hopkins. The personal jurisdiction and venue claims, however, were not addressed in his brief. Therefore, the court deems them abandoned. The court construes Dr. Hopkins' arguments as a Rule 12(b)(6) motion to dismiss for failure to state a claim and a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

I. Motion to dismiss for failure to a state claim

A. Standards

A court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). The pleadings are liberally construed, and all reasonable inferences are viewed in favor of the plaintiff. Fed.R.Civ.P. 8(a); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson,* 750 F.2d at 813. The issue is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

B. Analysis

■ In his motion to dismiss, Dr. Hopkins argues that Kansas law does not recognize a right to contribution or comparative implied indemnity in a FELA case involving successive tortfeasors. Dr. Hopkins acknowledges that the Kansas Supreme Court has recognized such a cause of action in a FELA case involving joint tortfeasors but seeks to distinguish this case because it involves successive tortfeasors. A railroad's claim for contribution or indemnity for liability incurred under FELA depends entirely upon state law. *Tersiner v. Union Pac. R.R.,* 754 F.Supp. 177, 178 (D.Kan.1990), *aff'd,* 947 F.2d 954 (10th Cir.1991); *Gaulden v. Burlington N., Inc.,* 232 Kan. 205, 210–11, 654 P.2d 383 (1982). Therefore, the court's task is to determine what the Kansas Supreme Court would do if confronted with this issue.

■ The Kansas Supreme Court has held that a railroad sued for damages under FELA has a right of contribution or comparative implied indemnity from a third party whose negligence caused or contributed to the injury. *Gaulden,* 654 P.2d at 383. In *Gaulden,* a former railroad employee brought an action under FELA against the railroad and a third party and the railroad sought contribution and/or indemnity from the third party. *See id.* The court held that a railroad against whom a lawsuit is brought under FELA may bring a claim for contribution or comparative implied indemnity to recover from a third party tortfeasor if it can establish "(1) that the third party's negligence partially caused or contributed to the injury and damage, (2) that the carrier has some causal negligence, and (3) that the injured employee's causal negligence is less than 50% of the total causal negligence." *Id.* The court added, "[w]e further hold the causal fault or negligence of all parties, including the contributory negligence of the plaintiff and the negligence of the carrier and any third parties, should be submitted to the jury and the percentage of fault of each determined in one lawsuit." *Id.* The *Gaulden* holding is consistent with the Kansas Supreme Court's "extremely tenacious one-trial-of-issues policy in cases subject to the comparative fault statute [K.S.A. § 60–258a]." *Joseph Mfg. Co. v. Olympic Fire Corp.,* 781 F.Supp. 718, 721 (D.Kan.1991).

■ Dr. Hopkins attempts to distinguish *Gaulden* on the grounds that it involved joint tortfeasors while the present action involves successive tortfeasors. The court finds this distinction unpersuasive. First, the Kansas Supreme Court has explicitly held that the Kansas "one-action rule applies to successive tortfeasors where it is claimed that medical malpractice, following an accident, contributed to

the injuries." *Lytle v. Stearns,* 250 Kan. 783, 830 P.2d 1197, 1210 (1992); *see also Mick v. Mani,* 244 Kan. 81, 766 P.2d 147, 152 (1988); *Teepak, Inc. v. Learned,* 237 Kan. 320, 699 P.2d 35 (1985). Second, the *Gaulden* holding is broad in nature and applies to any action that meets the three prerequisites listed. Cimarron has put forth facts sufficient to meet the three prerequisites. Third, Dr. Hopkins provides no explanation for why a FELA case joining a successive tortfeasor who is a physician would be any different than adding a physician in a non-FELA case. For the foregoing reasons, this court concludes that Cimarron has a cause of action under Kansas law against Dr. Hopkins for contribution or comparative implied indemnity.

## II. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Although a Kansas state court would recognize Cimarron's cause of action, the court must address the federal procedural posture of Dr. Hopkins' motion to the extent the motion seeks dismissal because the FELA claim and the indemnity claim do not stem from a common core of facts. Dr. Hopkins moves to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, asserting that the court lacks subject matter jurisdiction over this case. Pursuant to 28 U.S.C. § 1367(a), in any civil action where the district court has original jurisdiction, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." To be the same case or controversy, "[t]he state and federal claims must derive from a common nucleus of operative facts." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Stated another way, supplemental jurisdiction exists over a plaintiff's state claims "if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding...." *Id.* at 725.

Dr. Hopkins relies on two Western District of Louisiana opinions, *Miller v. Griffin-Alexander Drilling Co.,* 685 F.Supp. 960 (W.D.La.1988), *aff'd,* 873 F.2d 809 (5th Cir.1989); *Harrison v. Glendel Drilling Co.,* 679 F.Supp. 1413 (W.D.La.1988), which both held that a federal maritime claim regarding injury sustained on a drilling rig did not share a common core of facts with a state medical malpractice claim regarding subsequent treatment of injury. Dr. Hopkins argues that plaintiff's malpractice claim and Cimarron's comparative implied indemnity or contribution claim do not share a common core of facts with plaintiff's FELA claim. He argues that the facts relevant to liability on the FELA claim, the September 16, 1999 accident and working conditions at the railroad grounds, are completely unrelated to the facts central to liability on the malpractice claim, the October 20, 1999 and November 2, 1999 surgeries. Since the legal theories of liability on each theory are also different, Dr. Hopkins argues that supplemental jurisdiction is inappropriate.

■ While few opinions have been written regarding this particular question before the court, the court finds the reasoning in *Mueller v. Long Island R.R. Co.,* No. 89 Civ. 7384(CSH), 1997 WL 189123, at *1 (S.D.N.Y. Apr.17, 1997), to be more persuasive than reasoning in the two Western District of Louisiana opinions. *See also Wood v. Standard Products Co.,* 456 F.Supp. 1098, 1099 (E.D.Va.1978); *Sinclair v. Soniform,* 935 F.2d 599, 600 (3d Cir.1991). The facts in *Mueller* are very similar to this case. In *Mueller,* plaintiff sustained injuries to his elbow while working for his employer, Long Island Railroad. 1997 WL 189123, at *1. As a result

of those injuries, plaintiff had several surgeries on his elbow between 1989 and 1994. *See id.* In 1989, plaintiff initiated an action against the Long Island Railroad in federal court under FELA seeking damages for his injury. *See id.* Four years later, he initiated a state court action against his surgeons for surgical complications. *See id.* Plaintiff and Long Island Railroad then sought to join the surgeons in the federal court action. *See id.* The surgeons objected on grounds that the court lacked subject matter jurisdiction over the claim and that Rule 14(a) did not permit the railroad to implead a third party. *See id.* at *2.

As to jurisdiction, the court in *Mueller* held that the two main claims are part of the same case or controversy and, therefore, supplemental jurisdiction exists over the state law claim for medical malpractice. *See id.* at *3. The court reasoned that "there is one fact central to the FELA claim, the malpractice claim, and the indemnity claim: the alleged permanent injury to plaintiff's left arm." *Id.* at *2. The court acknowledged that the facts relating to liability are different, but the facts relating to damages are identical. *See id.* Similarly, in this case Mr. Lewis is alleging permanent injury to his neck. While he has not sued the doctors for medical malpractice, he is alleging an injury that Cimarron contends is at least, in part, caused by Dr. Hopkins' medical malpractice. Therefore, from the pleadings it appears that both Cimarron and Dr. Hopkins may be responsible for Mr. Lewis' injury, as well as his lost wages. As another judge in this district has previously held, "[w]hen several causes combine to cause a harm, as they are alleged to have done here, the causes are part of the same controversy, and ... supplemental jurisdiction is properly exercised." *Urban v. King,* 783 F.Supp. 560, 563 (D.Kan.1992). As the *Mueller* court pointed out, this remains true even when different factual

scenarios or legal theories of liability are present.

■ Although the court holds that supplemental jurisdiction exists in this case, the exercise of such jurisdiction is discretionary. *Gold v. Local 7 United Food & Comm. Workers Union,* 159 F.3d 1307, 1310 (10th Cir.1998) (quoting *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 529, 139 L.Ed.2d 525 (1997)). District courts are statutorily authorized to decline supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Section 1367 "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Gold,* 159 F.3d at 1310 (citing *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 529, 139 L.Ed.2d 525 (1997) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 357, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988))).

■ None of the enumerated factors in § 1367(c) are present in this case and, as will be discussed below, exercising supplemental jurisdiction will promote judicial economy and fairness to the litigants. First of all, the legal theory raised by the proposed indemnity claim involves garden variety questions of tort liability. While the indemnity claim could raise complex medical factual issues, it does not involve a novel or complex issue of state law. It is

also unlikely that the indemnity claim will predominate over the FELA claim. Finally, this court does not find any other compelling reason to decline jurisdiction.

Additionally, judicial economy, convenience and fairness to the litigants are best served by determining liability for the plaintiff's injuries in one action. If Cimarron is found liable for Mr. Lewis' injuries it would then have to attempt to sue Dr. Hopkins in state court and retry the issues. Trying the claims together will avoid a duplicative effort and serve the interests of judicial economy and convenience.

The plaintiff has taken no position on this motion and has raised no argument that joining Dr. Hopkins is in any way unfair to the plaintiff. In his motion to dismiss, Dr. Hopkins does make one argument regarding fairness. He argues that it is not just to require him to appear in federal court to defend himself against a claim that would not have otherwise existed had he not treated a railroad worker who is covered by FELA. He reasons that exercising jurisdiction over Cimarron's claim against Dr. Hopkins will deter physicians from providing medical care to workers covered by FELA because the physicians will fear that they will be joined in a lawsuit in which their own patient has no complaint regarding the physician's care.

The court finds this argument unpersuasive because the fact FELA confers subject matter jurisdiction on this court is not the reason that Cimarron is able to join Dr. Hopkins in the same lawsuit. If Mr. Lewis' claim were not a FELA claim, and there were no other basis for federal court jurisdiction, Cimarron would still be permitted to join Dr. Hopkins in a Kansas state court action irrespective of whether or not Mr. Lewis brought a claim against him because K.S.A. § 60–258a (c) provides a mechanism for a plaintiff or defendant currently in a lawsuit to join other potentially negligent persons in the lawsuit. Thus, Dr. Hopkins is incorrect to the extent he asserts that Cimarron would have no basis to hale him into court had he not treated a railroad worker as opposed to someone else.[2] Finally, the court is unconvinced that physicians will be deterred from providing medical treatment to workers covered by FELA because a claim against them can be brought in federal as opposed to state court. Regardless of the type of claim the plaintiff brings, a physician who renders care to an injured person always run the risk that a defendant may bring the physician into a lawsuit to assess their responsibility for the person's damages even though the plaintiff has not alleged that the physician committed medical malpractice.

Given the potential for duplicative efforts if Dr. Hopkins is not allowed to remain in this action, and the absence in the record of any persuasive argument against exercising jurisdiction, the court concludes that it should exercise supplemental jurisdiction over Cimarron's comparative implied indemnity or contribution claim.

---

**2.** The court recognizes that the existence of a FELA claim does permit Cimarron to bring a comparative implied indemnity or contribution action against Dr. Hopkins despite the fact that Kansas law does not recognize such a claim in other contexts. *See Gaulden,* 654 P.2d at 391 (holding that a claim for contribution or comparative implied indemnity exists while recognizing that Kansas does not recognize such a claim in other contexts). The only reason such a claim is not recognized in other context, however, is because K.S.A. § 60–258a (c) provides a mechanism for a plaintiff or defendant currently in a lawsuit to join other potentially negligent persons to the lawsuit and have the fault of each of the parties compared in one action. Thus, it is only the nomenclature which is different here and not the ability of a defendant to bring all potentially responsible parties before the court.

## III. Motion to Dismiss for Improper Joinder

■ Even if the court has jurisdiction over Cimarron's claim, Dr. Hopkins contends that Rule 14(a) does not permit the claim to be joined with the FELA action. The court construes Dr. Hopkins' argument as a motion to dismiss for improper joinder. Pursuant to Federal Rule of Civil Procedure 14(a), a defendant may move to implead a third party when that party "is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." It is well established that impleader is proper only where the third-party defendant's liability is "in some way derivative of the outcome of the main claim." *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1498 (10th Cir.1983) (quoting *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir.1967)).

■ Dr. Hopkins argues that Rule 14(a) cannot be utilized in this case to implead him because it is not possible for Dr. Hopkins to be liable to Cimarron. The court does not find this argument persuasive. Dr. Hopkins does correctly note that after a 1946 amendment to Rule 14, it is no longer possible to bring a party into a lawsuit simply because he or she is or may be liable to the plaintiff. *Hefley*, 713 F.2d at 1498. The third party defendant's liability must be "in some way derivative of the outcome of the main claim." *Id.* (quot-

ing *United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir.1967)). Cimarron's claim, however, is derivative of the outcome of the main case. Under Kansas law, a party causing an initial injury is liable for any additional injury to the injured party that arises from medical malpractice occurring in the treatment of the original injury. *See Fieser v. St. Francis Hosp. & Sch. of Nursing, Inc.*, 212 Kan. 35, 510 P.2d 145 (1973). Further, under FELA, a railroad must bear all of the loss sustained by an employee which is caused jointly by the fault of the railroad and third persons. *Gaulden*, 654 P.2d at 391. Thus, it is possible that Cimarron could be found liable for injuries actually caused by Dr. Hopkins' treatment. That makes Cimarron's claim derive from the outcome of the FELA claim.

The court's decision is also consistent with the purpose of Rule 14(a). The purpose of Rule 14 is to "accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy and to prevent the necessity of trying several related claims in different lawsuits." *Hefley*, 713 F.2d at 1498 (citing *Goodrich v. Burlington N. R.R. Co.*, 701 F.2d 129, 130 (10th Cir.1983) (*quoting United States v. Acord*, 209 F.2d 709, 712 (10th Cir.1954), cert. denied, 347 U.S. 975, 74 S.Ct. 786, 98 L.Ed. 1115 (1954))). By permitting Dr. Hopkins to stay in this lawsuit, it is possible to apportion the fault for Mr. Lewis' injuries in one action.[3] The claim of Ci-

---

3. Dr. Hopkins' argument regarding the inherent unfairness of requiring him to stay in this lawsuit is not persuasive. Dr. Hopkins argues that if the tables were turned and Dr. Hopkins was being sued, then he could not compare the fault of Cimarron. The court does not agree. Dr. Hopkins misconstrues the *Smith v. Kennedy* case. *Smith* holds that a physician defendant may not compare the plaintiff's liability in causing the injury to the doctor's negligence in treating that injury. No. 00–2054–KHV, 2000 WL 968780, at *5 (D.Kan. May 18, 2000). In *Smith*, the court

specifically addressed the Kansas one action rule but noted that it was not relevant because the case did not involve successive tortfeasors. The doctor could not identify any individuals who could be liable to the plaintiff for the initial accident. Because plaintiff was wholly at fault for the original accident, the one action rule was not relevant. In contrast, Dr. Hopkins and Cimarron are successive tortfeasors and if Dr. Hopkins were sued he could add Cimarron under the Kansas one action rule.

marron against Dr. Hopkins, then, is properly joined with the claim of Mr. Lewis against Cimarron.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the motion to dismiss by third party defendant Dr. Hopkins (Doc. 41) is denied.

**IT IS SO ORDERED** this __ day of September, 2001.